221098, and we'll hear from the appellant. Good morning, Your Honors, and may it please the Court, Barbara Smith, for appellants in this case. The question the Court faces today is whether there's an irreconcilable conflict between the Federal Arbitration Act, on one hand, and ERISA, and the causes of action that ERISA provides, on the other, such that this individual plaintiff cannot effectively vindicate his ERISA rights in individual arbitration. But because there is a way to read the two statutes consistently, this Court can and should do that, and should reverse to compel arbitration. Counsel, can this plaintiff obtain the relief that he seeks if this arbitration agreement is enforced? Well, the operative legal question is whether he can obtain effective relief, whether he can effectively vindicate his rights. And that would be plan-wide relief, wouldn't it? It would be, in this case, his right to pursue individual monetary remedies. In other words, all of the monetary damages he claims to be due under the alleged breach of his individual plan account. But he seeks wider relief, does he not? He has pled wider relief, but the arbitration clause is limited to his individual monetary relief. And the operative legal question is whether providing him only that relief allows him to effectively vindicate his rights as ERISA has outlined them. But isn't that interpretation contrary to the language of ERISA? I don't believe so, Your Honor, because the language of ERISA talks about the ability to have effective relief. And so the operative question isn't, can you do anything and everything under the sun in terms of monetary damages, equitable relief, and otherwise, in order to pursue your claims. But rather, will this individual arbitration allow you to effectively vindicate the rights ERISA has provided to you? And I respectfully submit that the Supreme Court's decision in LaRue, which allowed for individualized proceedings in this type of ERISA regulated plan, means that individualized arbitrations are likewise consistent with ERISA. And if that's the case, if you can circumscribe arbitration or litigation to an individual claim in a defined contribution. So is Larissa absolutely controlling here on all fours, factually, and the relief sought in the complaint by the plaintiff? I think the allegations in LaRue were different. But I think the rationale of that case is controlling, particularly when the court considers it in light of the Viking River Cruises case, in which the litigant, the plaintiff in that case claimed, I'm not able to effectively vindicate the rights that the Private Attorneys General Act in California provides me because that act provides me the right to seek relief on behalf of other plaintiffs. That is the right to pursue other substantive claims that other plaintiffs would have. And because individualized arbitration in the Viking River Cruises case would have precluded that, the plaintiff in that case argued, he couldn't effectively vindicate his rights. If the case were in federal district court, would the plaintiff in this claim, in this case, be entitled to seek, as an equitable remedy, the removal of the fiduciary? Yes, if the arbitration provision weren't… Because ERISA statutorily authorizes it under Section 502, correct? That is one of the portions of relief that ERISA authorizes participants and beneficiaries to seek. And so why shouldn't we be bound by what Justice Scalia said in Italian Colors? The effective vindication exception would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights. One of those statutory rights, among others, would be the right to have the fiduciary removed. That is one of the forms of relief available under ERISA. But I think the operative language that Justice Scalia authored in the Italian Colors case is in his description of the exception, which, by the way, the Supreme Court has never actually applied to invalidate an arbitration provision, in which he said, so long as the prospective litigant effectively may vindicate the statutory cause of action, then all of the goals of the statute are met. So the question is, in pursuing individual monetary relief, and if proving it in individual arbitration, getting all of the money and damages to which this plaintiff claims he's owed, is he effectively vindicating his ERISA rights? I think the answer to that question is yes, based on cases like McCutcheon, in which the Supreme Court said that it is protection of benefits that's at the heart of ERISA. So as long as you're allowing the plaintiff to protect his right to benefit. So it's only money. If he gets his money back, his little tiny bit of money that's held up or caused to be reduced by whatever happened in this case, I won't describe it, that's enough, right? There's no opportunity for him to replace the fiduciary and say there was a breach of the fiduciary duty. I would describe that as the effective vindication of this plaintiff's individual rights under ERISA. I would also note that it remains open to agencies like the Department of Labor to pursue other plan-wide or equitable remedies if it believes that such remedies are appropriate. So you've just agreed that's an effective remedy. That's something that he should be able to pursue. It is one of several remedies that the statute under ERISA allows him. But enforcing all of those remedies is not what effective vindication requires. Effective vindication, not perfect vindication, means can he do the core thing ERISA allows him to do, which in this case is pursuing the monetary damages to which he is entitled. Every other participant or beneficiary in the plan can, of course, seek their own monetary damages if they likewise believe they can prove they were harmed. And the Department of Labor, like the EEOC in the Gilmer case, remains available to pursue other equitable and plan-wide relief. I'm sorry, Judge Bachrach. Is that because monetary remedies are more important than equitable remedies like removal of a fiduciary? Why is it that your theory that it provides the core remedies authorized under ERISA because it allows monetary remedies but not these equitable remedies, why is that? Is it because the monetary remedies are more important than the equitable remedies? It's because pursuing those monetary remedies allows him to effectively vindicate his rights. I wouldn't describe it as a balance of importance. I'd describe it as evaluating whether the right as ERISA articulates it. What if the arbitration agreement said you can only obtain equitable remedies and you can't obtain any monetary remedies? Would that agreement allow you to effectively pursue the statutory rights under ERISA? Well, I certainly think that would be a difficult and perhaps different case than this one because I think the statements in McCutcheon and others that describe the core of ERISA as protection of the benefit mean that it's that monetary remedy that is the core of what ERISA protects. So I think if you brought that litigation, you'd have to contend with that language in McCutcheon and other language like in Dudenhofer that talks about the importance of employees. Well, aren't you protecting the benefits if you get a fiduciary that's trustworthy? Isn't that a means of protecting the benefit? I certainly don't contest that that is one of the remedies available in appropriate, as the statute describes it, in appropriate cases. So it's not an automatic remedy to which a plaintiff should be entitled and it's certainly not one that would attach to every case. In fact, you could understand why it wouldn't attach in a case like LaRue where there was an allegation that the $150,000 that that particular plaintiff was due was due to him because of particular actions that harmed him alone. And so there wasn't plan-wide, a plan-wide remedy contemplated in that case. Nor, I would add, would the other participants to that plan have wanted a plan-wide remedy. For all we know, they were perfectly happy with the way the fiduciaries in that case were operating. Also, are you saying that the enforcement of the arbitration clause hinges on the pleading of the plaintiff? That is, if remedies are sought that are plan-wide, the arbitration provision is not enforceable? No, I think the operative legal question is, can you enforce the FAA's commands to enforce arbitration provisions as written and still further the aims of other federal statutes when plaintiffs allege the two statutes conflict? Every time the Supreme Court has faced that question, it has found a way to reconcile the two statutes. And in fact, it's gone further than that to say that if a court is not going to reconcile the two statutes, the goals of the FAA, which mandate that courts enforce arbitration provisions as written, and the goals of other statutes, here, ERISA and the protection of benefits to plan participants and fiduciaries, there has to be a clear statement in the statute indicating that the arbitration clause is subverted to the other federal statute. Here, we have exactly the opposite. In ERISA, which was enacted after the Federal Arbitration Act was passed, 29 U.S.C. 1144 says nothing in this act should be seen to subvert or supersede any other federal statute. So ERISA contains a provision that says if there's a conflict, it's ERISA that gives, not the other federal statute. I respectfully think that that is the legal question the court has to grapple with. The court in Smith failed to do that. That was one of the legal errors that court committed. And failing to do so simply doesn't abide by the Supreme Court's precedent for how these types of cases are to be resolved. Counsel, I was surprised. I thought you would have led with the EPIC case. I think EPIC systems is on point and controlling here. Likewise, I think Gilmer and CompuCredit are on point and controlling. The arbitration clause in EPIC provided the arbitrator could grant any relief that could be granted by a court, which is vastly different from what we have here, isn't it? Well, the question the court faced in that case was whether a federal statute that contemplated a collective action scheme necessarily precluded arbitration, and the court said no. Likewise here, ERISA contemplates a collective action scheme, but that doesn't mean that Okay, but isn't that case clearly distinguishable because the arbitration clause is so different? That arbitration clause, as I indicated, provided that the arbitrator could grant any relief that could be granted by a court. That is certainly a distinction, but the reason I think EPIC systems is important and relevant to this case is because there are three challenges the plaintiffs bring to the arbitration clause in this case. The first is that the arbitration clause has to fail because it doesn't allow for collective action. That is what directly contradicts the Supreme Court's holding in EPIC systems that said, even if you have a federal statute that contemplates collective action there in the NLRA, in Gilmer, in the ADEA, in CompuCredit, in the Credit Repair Organization Act, even if you have a statute that contemplates collective action, you can still have individualized arbitration. But the NLRA, as indicated in the opinion, Section 7 is really a collective bargaining provision, isn't it? Well, it talks about collective bargaining. It also talks about the Well, it talks about collective bargaining a lot, doesn't it? and the right to pursue concerted action, which the plaintiffs in that case claimed entitled them to class-wide claims. Isn't it further distinguishable that the claim that's made is not even an NLRA claim? It's a FLSA claim. Doesn't that clearly distinguish the case further? It certainly means that the conflict alleged in that case arose from a different federal statute. That is a distinguishing factor, but I think the operative legal point is that when you have a federal statute that contemplates collective action, if you're going to find a conflict with the FAA, it has to be clear and it has to be obvious in the face of that second statute that the FAA is what gives. And here we have the opposite of that, as 1144 in ERISA makes clear. I'd add, I think the more recent Viking River Cruises case, as I suggested in my opening, is on point because it does address the question of substantive remedial relief. Can I bring substantive claims that I otherwise wouldn't be entitled to bring because this state statutory scheme there, the Private Attorneys General Act, allows me to do so and that conflicts with individualized arbitration. There was an effective vindication argument made by the respondents on page 22 of their brief before the Supreme Court in that case, so there's no question that question was squarely before the court in Viking River Cruises and it rejected that argument. Likewise, I think you have to reject that argument here. If I may, I'd like to reserve several minutes. Just a minute. The issue that the district court did not address, and that is whether or not the arbitration clause was effective because of notice. In the summary plan description, I note that it says that there was a statement of your, the participants, right to bring a civil action under 502 of ERISA following adverse benefit determination. It says that a second time in the claims procedure. And then later it says, or you can do this administrative procedure or you can file a suit in federal court. Doesn't that just kind of nail that issue? No, because the operative legal document that controls arbitration or the ability to bring claims is the plan document itself. It's not the summary plan description. Are you telling me if there's a misstatement in the summary plan that that's just okay? You just overlook it? I'm telling you if there's a conflict between the summary plan description and the plan document, it's the terms of the plan document that control. That's the operative contract. Why would a participant ask for the plan documents if it reads the representations in the summary plan description that they can file a suit in court? Well, I suppose you could ask the plaintiff here who did exactly that, who requested a copy of the plan document, which plaintiff's counsel knew to be binding on the plaintiff, and then brought this lawsuit based on the terms of the plan document. That's a fundamental tenet of ERISA is that the terms of the plan itself control. Well, he was not obligated to participate in the ESOP, was he? As ERISA defines it, once the plan is in place, continuing it is. I understand. But as an individual, he was not required to use the ESOP for his retirement, right? No, he could have resigned from the company. You mean it's mandatory that you be in the ESOP if you're an employee? Correct. There's no opt-in. There's no voluntary sign-up. Once the plan is in place, it binds participants and beneficiaries and fiduciaries alike. That is the core tenet of ERISA that the plan document controls, and frankly, I think that's a relatively uncontested proposition of ERISA. If the plan document didn't control here, there would be no claims to bring in federal court at all because all of these claims turn on his alleged entitlement to benefits under the plan. Uncle, I understand your point. Thank you. Thank you. I will go. Even though you're out of time, I'm going to give you one minute for rebuttal. I appreciate that. I'll talk fast. But you're from the appellate. Good morning, Your Honors. May it please the Court. John Stokes for the appellee, Robert Harrison. I'm splitting my time with Ms. Valor from the Department of Labor. I'm going to stick to my ten minutes to make sure she has plenty of time. This case is a textbook case of prospective waiver. If you're going to send a case to arbitration, the plaintiff must be able to pursue in arbitration all of the rights and remedies, the substantive rights and remedies that the plaintiff would be able to pursue in court. Here, there are multiple remedies that ERISA expressly authorizes, that this Court and others have approved in non-class ESOP cases brought under 1132A2, remedies that we seek in our complaint, but which are not available under the arbitration clause here, which is expressly non-severable. The clause is therefore invalid, and this case must proceed in court. Well, can you control whether or not the arbitration clause is enforceable by the way you plead your case? If you throw in all of these means of relief, does that get you past the provision? Yes. If the statute allows us to pursue a certain type of relief, and we seek that relief in our complaint, the fundamental point of the prospective waiver doctrine is that relief must also be available to pursue in arbitration. That's exactly how it works. I suppose if there were a remedy we didn't seek, that that couldn't be a basis for applying the prospective waiver doctrine. But if the statute allows us to pursue it, and we plead it in our complaint, and they write a non-severable arbitration clause that can't carve off that piece of it, then if we can't get it in arbitration, that is the paradigmatic circumstance where the effective vindication doctrine, prospective waiver doctrine applies. And before I speak about any of the specific remedies, I want to address one very important point. There is no conflict here between ERISA and the FAA. The prospective waiver doctrine isn't some principle of ERISA that we're trying to import into the FAA context to avoid arbitration. We're not arguing that ERISA claims are non-arbitrable or even that ERISA guarantees us a class action. That's not the point. The prospective waiver doctrine is a doctrine of the FAA. It comes from the Supreme Court's and this court's and other circuits' FAA case law. And it says it's a procedural safeguard for arbitration that says if you're going to have arbitration, you look at the statute that you're suing under to see if you can get all of the substantive rights and remedies. So I'd like to address the specific remedies and other substantive rights that we're talking about. And if you start, I think the easiest place is with fiduciary removal, which is just right there in the statute. It's in the words of Section 1109 as a remedy that is available for participants to pursue. And this court in Eves v. Penn, it's a non-class ESOP case brought under 1132A2, approved of that remedy, of the fiduciary removal remedy. Now, Eves is a 1978 decision of this court. It's cited in our brief at pages 8 and 23 and 33. So we've cited it a bunch of times. But it's an older case. But it continues to be good law. And it's being cited at least in 2021 in this court's decision in Ramos as describing the appropriate scope of remedies under ERISA. So that's directly on point for our case as fiduciary removal being a remedy that's available to us. And as the Seventh Circuit recognized in Smith, it's a right that participants can pursue in court without a class on a non-class basis. And it has to be available in arbitration. It's not the clause in unseverable. That would be enough. Now, there are also other remedies. And I want to talk about the monetary piece of this because it's very important. There, too, the starting point is the statute, which speaks in mandatory and categorical terms. It says that in 1109, the breaching fiduciary shall restore any losses and disgorge any profits. There is no wiggle room there. And we've cited you to multiple decisions from this court and other courts, including Eves again, and the Brundle case, for example, from the Fourth Circuit, that have allowed individual plaintiffs in ESOP cases to pursue the entire loss on behalf of the plan. And I think the only thing that my friends on the other side have to say in response to that relies on a fundamental misreading of the Supreme Court's decision in LaRue. In LaRue, the only losses at issue, the only losses at issue in that case were losses associated with Mr. LaRue's individual account. And so people said, well, we have this language from Russell that talks about the entire plan. Your loss here isn't a loss to the entire plan. It's just a loss as to the plan assets that would be attributable to your account. And so you can't even sue under 1132A2. And the Supreme Court in LaRue said, no, that's not right. And the key quote in my eyes is at 256 of the decision in LaRue. And it says that both sides of the coin are incorporated in 1109. Whether the breach affects assets that are payable to all participants or only to participants tied to particular accounts, those are all plan losses that can be recovered under 1109 and 1132A2. So the court said that both things are part of what you can recover. The maximum case where you have a loss of the whole plan and the case where the loss is just as to your individual account. I have just a logistical question about the application of 1109. Now, in LaRue, obviously, it's understandable it's one individual account, although the injury was to the plan. With regard to disgorgement of profits to the plan itself, Mr. Harrison wouldn't be able to get a remedy, whether it's in federal court or in arbitration, of all of the disgorgement of profits from the fiduciary, right? But the disgorgement would go to the plan. The disgorgement of the profits would, as with the loss restorations, if there could be a distinction, all of it goes back into the plan. And that's a key point. A plaintiff under A2 suing in court cannot get a check written to them. All of the money goes back into the plan and then gets eventually distributed according to the terms of the plan. So in Brundle, for example, the full, I think, was a $32 million loss that the plaintiff proved in that case. That loss gets put back into the plan as a whole. It doesn't go to the individual plaintiff. It goes into the plan. So there is no individual claim under this example? No, there is no individual claim. And this, I think, is a fundamental point. And it goes to the very nature of the claims here. So if you have a claim under, for example, the ADEA, like in Gilmer, the starting point is you can sue on your own behalf for injuries that you personally suffered. And the question in Gilmer is, can you waive the right to aggregate that individual claim with a bunch of other people's individual claim? Claims under A2 are fundamentally different. They can only, to your point, Judge Murphy, they can only ever be brought on behalf of the plan. There is no such thing as a non-representative claim under 1132 A2. And the Supreme Court in Viking River drew a sharp and critical distinction between those two contexts. The aggregation class procedure context, on the one hand, waivable, and the type of single-agent, single-principle, non-class representative claim that we're talking about here. That is part of substantive law. That is part of substantive law and is non-waivable. This is at 1922 of the Supreme Court's decision. And the examples that the court gave included like corporate derivative actions. Let me ask you this. Yeah. If your client proceeded arbitration on his, it would be the same relief. It would be plan-wide relief that the proportionate profit attributed to his account would just go back into the fund? No, on multiple levels. So this is what I was getting at. The arbitration clause here says that you are not allowed to sue on a representative basis or a class or collective basis. So it says you can only sue in your individual capacity. It eliminates the right to sue in a representative capacity altogether. I understand, but if he went ahead and arbitrated his individual claim, what happens to the money? Does it go to him directly? Well, presumably that's how the arbitration clause is supposed to work. I think that by the terms of the arbitration clause, that is how it would work under the arbitration clause, which is inconsistent with how ERISA works. I believe that the defendants may have said in their brief, and I would note, that that would still not be the full loss that we're allowed to pursue under 1109. So if the court has no further questions, we would just simply ask that you affirm. Thank you. Thank you. May it please the court, my name is Brendan Ballard, and I represent the Secretary of Labor as amicus in support of Plaintiff Appellee. This case is reflective of a growing trend among employers seeking to avoid the full consequences of violating ERISA. By inserting into plan arbitration provisions waivers to plan-wide remedies. Well, if everybody's doing it and it's bad, and you've seen that everybody's doing it and it's bad, then why doesn't the Department of Labor step up and take care of this? In what way would you suggest that the Department of Labor? Bring an action in this case. Bring an action in this case. We're joining as amicus for the very reason that we want to let the court know. Well, I mean bring your own lawsuit. That's what the defendants are saying. There is a remedy. Oh, I see what you're saying.  The Department of Labor can come in full force and sue. So, in response to what defendants argument, they're basically saying that the ability or the right to bring an action to remove a fiduciary. That they're conceding that that's inherently plan-wide relief that the arbitration provision precludes. But then they're saying that the participant's right can still be effectively vindicated because the Secretary of Labor can come in as you're referencing and bring an action to remove the fiduciary. So, I think that this is a red herring because the right belongs to the participant separately from the department. In appellant's interpretation, essentially you would have to alter the text of Section 502A2 by striking out a party that's entitled to bring an action. It's a fiduciary, the secretary, and a participant. And you would also curtail the relief that Congress explicitly contemplated in Section 409A, which is to plan-wide relief. So, you know, maybe if the secretary and the secretary has broad claims in many ESOP cases. But part of the reason that ERISA allows participants to bring these sorts of claims is because the Secretary of Labor does not have the resources to monitor every plan in the country at every juncture. So, even if the court were to bring such an action here, or even if the secretary were to bring such an action here, it doesn't mean we would have the ability to do it in every single case. Therefore, that right would not be able to be effectively vindicated. But that's separate and apart from the key point, which is that this is a right that belongs to the participant separately from the secretary. And that's very clear from the text of ERISA. What if the plaintiff were pro se, and there was this arbitration clause, and the pro se litigant seeks removal of the fiduciary? Would the courts still have to say, okay, well, arbitrator, you can adjudicate through arbitration the removal of the fiduciary? So, if there were no, yes. It seems counterintuitive. Well, in this case, keep in mind, there's the class action waiver, and there's also this remedy limitation, correct? So, if one part is invalid, all of it's invalid. But if we are talking about a provision that just has this remedy limitation that says that a participant may not bring a right on behalf of the plan for plan-wide relief, which is inherently removal of fiduciary, and we struck that down, yeah, the participant could bring that claim in arbitration. And that would bind the plan, bind the fiduciary. And secondly, I just wanted to address quickly the other side's misinterpretation of Viking River. I think it should be really clear that we're talking about the effective vindication doctrine, which was explicitly reaffirmed there. The court in Viking River, it was in a footnote, but it said that the Federal Arbitration Act does not mandate enforcement of provisions that waive substantive rights. And that's what we're talking about here. Not a procedural class action where individual claims are aggregated, but we're talking about a substantive single agent bringing in action on behalf of a single principal. And in Viking River, the court said that that was substantive, and that can't be waived. And it has nothing to do with the contrary congressional command doctrine. We're talking about here the effective vindication doctrine. And under the provision, this arbitration provision, the participant cannot effectively vindicate its statutory, substantive statutory right to bring in action on behalf of a plan for the plan-wide relief explicitly set forth in Sections 502, 802, and 409A. And that was an ERISA case? Which case? The case that you mentioned, Ed. Viking River was not an ERISA case. Right. Thank you. Thanks. Thank you, Your Honors. Judge Bachrach, I'd like to address your question about whether a pro rata share of profits are available in individual arbitration. The answer to that is yes. It's found on page 119 of the appendix to this appeal that makes clear an individual in an individualized arbitration can receive their portion of the alleged harm and subsection to a pro rata portion of any profits allegedly made by the fiduciary through the alleged breach. So I think the answer to your question is yes. The pro rata share of profits are available. I'd like to also address the discussion of LaRue from my friend on the other side, which I think is just fighting the conclusion in LaRue itself. Justice Kavanaugh said you can bring an individual action pursuant to ERISA in LaRue. If you can bring an individual action, you can pursue an individual arbitration. And finally, to address the remedy question that DOL raised here, one, there's absolutely no reason this court should give deference to the Department of Labor in interpreting the statute. Epic Systems makes that clear. It's for this court to decide the legal question, not an agency. And if the court wanted to defer to the agency's expertise, I think it would have to consider whether to defer to the agency's expertise in this case or contrary positions that this agency has taken in other cases, including those pending in the Southern District of New York and the Second Circuit, that say an individual can pursue an individual claim in a way that doesn't eliminate the otherwise effectiveness of ERISA. Thank you. Thank you. This was very well presented by both sides. This matter will be submitted.